SNIDER, and wife, Plaintiffs-Appellants, v. NORTHERN STATES POWER COMPANY, Defendant-Respondent.

*No. 75–688. Submitted on briefs November 2, 1977.—Decided December 13, 1977.*
(Also reported in 260 N.W.2d 260.)

For the appellants the cause was submitted on the briefs of *William P. Skemp*, and *Hale, Skemp, Hanson, Schnurrer & Skemp* of La Crosse.

For the respondent the cause was submitted on the brief of *L. E. Sheehan*, and *Moen, Sheehan & Meyer, Ltd.*, of La Crosse.

HEFFERNAN, J. The cause of action by Donald Snider and La Verna Snider, his wife, is asserted against Northern States Power Company, the owner of a nuclear generating plant which was under construction. Snider was a journeyman electrician employed by L. K. Comstock Company, a contractor employed by Northern States Power to do the electrical work.

The plaintiffs recognize the general rule that an owner of a project under construction is not ordinarily liable for the negligence of an independent contractor. It is their contention, however, that facts warrant the imposition of liability, because in this case Northern States Power actually retained control and supervision of the construction and, therefore, its duty to an injured party is the same as that of the independent contractor in respect to failure to properly control and supervise. It is also contended that the work being performed was inherently or intrinsically hazardous and, under such circumstances, the owner had a nondelegable duty to exercise ordinary care.[1]

The appeal is from a summary judgment in favor of Northern States Power which dismissed the plaintiffs' complaint. The defendant's motion was supported by affidavits which showed that Comstock was an inde-

[1] Any liability of Comstock, Snider's employer, was limited to worker's compensation under the provisions of ch. 102, Stats.

pendent contractor hired by Northern States Power to do the electrical work, that Northern States Power did not exercise any supervisory capacity over the contractors in respect to the details of their work or in respect to adherence to specific safety rules, and that Northern States Power was unaware of the facts which led to Snider's injury.

The counter-affidavits in opposition to the motion for summary judgment consisted mainly of affidavits of electrical workers who stated that the work of an electrician in the construction of a nuclear power plant was "extra-hazardous." The principal emphasis of the plaintiffs' affidavits was to state that Snider's work was extra-hazardous, and thus the usual immunity afforded to an owner, in this case Northern States Power, did not apply.

The facts surrounding the injury to Snider are set forth in the affidavits and are not in dispute.

Snider, in his work as an employee of Comstock at the proposed plant, was installing a sheet metal cabinet designed to contain certain electrical equipment when he fell from the top of the cabinet to the floor, a distance of approximately 90 inches. The cabinet was about to be lifted onto a concrete base. An overhead hoist with nylon slings or straps was to be used to lift and place the cabinet on the concrete base.

In order to prevent the slings from pinching in and crushing the tops of the sheet metal cabinets, a plywood spreader—a sheet of plywood—was placed on the top of the cabinet prior to hoisting to prevent the slings from pinching in the cabinet.

The plywood spreader used on the top of the cabinet from which Snider fell was substantially larger than necessary, and as a result there was a considerable overhang. Snider mounted the cabinet to fasten the nylon slings preparatory to hoisting the cabinet. To

reach one of the slings, he backed up on his hands and knees. Although he had previously been warned of the overhang, he forgot about it; and when his weight was placed on the overhanging portion of the plywood spreader, it tipped, and Snider fell to the floor sustaining injuries.

The prior warning in respect to the overhang came from Snider's own foreman. No one from Northern States Power was aware of the overhang problem, and no representative of Northern States Power was supervising or observing the electrical crew when the accident happened.

The affidavits show that Northern States Power reminded the contractors to conduct safety meetings with their employees, but Northern States Power made no attempt at direct control over the employees of the contractors. Northern States Power's electrical inspector stated that his only monitoring function was to see to it that the work was done in accordance with specifications.

It was on these facts presented by affidavit that the circuit court granted summary judgment to the defendant and dismissed the plaintiffs' complaint. Summary judgment is a device employed for the purpose of disposing of a case without trial when the affidavits demonstrate that no material facts are in dispute and only a question of law is presented. Sec. 802.08(2), Stats. We are satisfied from an examination of the affidavits submitted that no material facts are in dispute.

The theory of the defendant's motion for summary judgment, and the supporting affidavits, is that, as an owner of a construction project, it is not liable to the employee of an independent contractor for injuries sustained in the course of the construction. As stated above, Northern States Power recited facts showing

that none of the exceptions to this rule of immunity applies. It recited facts showing that it did not retain sufficient control of the work to be liable for the negligent acts of the contractors and that the work was not of an extra-hazardous character, so as to impose upon it a nondelegable duty in respect to employees of independent contractors.

The facts recited in the defendant's affidavits and the portions of depositions which are attached thereto exhaustively detail the factual framework of the work in which Snider was engaged and the particular task he was performing at the time of the accident.

■

The plaintiffs' affidavits in opposition to the summary judgment do not deny or attempt to controvert any of the factual allegations recited in the defendant's moving papers. The plaintiffs' affidavits do, however, contain numerous opinion statements alleging that the work was extra-hazardous. If that assertion were established, a nondelegable duty, arguably at least, would be imposed on Northern States Power as owner of the project. Such opinions do not raise evidentiary facts. They are merely conclusions which are insufficient.

■

An examination of the brief of the plaintiffs also reinforces the clear import of the affidavits that the real dispute is legal in nature and not factual. Nowhere in the plaintiffs' brief do the plaintiffs dispute a single material fact. Whether or not a special duty of a nondelegable nature was imposed upon Northern States Power is a question of law based on what were, in the instant case, undisputed facts. Whether the work in which Snider was engaged at the time he was injured was extra-hazardous is not dependent on the opinion of the plaintiffs' affiants or upon the opinion of the defendant to the contrary. Rather, on the facts, a

legal issue was presented, which can appropriately be decided on summary judgment by the trial court. *See, Ceplina v. South Milwaukee School Board,* 73 Wis.2d 338, 243 N.W.2d 183 (1976).

Because no evidentiary facts were in dispute, the trial court properly disposed of the matter by summary judgment. Accordingly, this court is obliged to determine whether the trial court's decision was correct as a matter of law.

As alluded to above, the general principle involved in a dispute of this nature is that one who contracts with an independent contractor is not liable to others for the torts of the independent contractor. *Lofty v. Joint School District No. 2,* 42 Wis.2d 253, 166 N.W.2d 809 (1969) ; Prosser, *Law of Torts* (4th ed., Hornbook Series, 1971), sec. 71, p. 468.

The most important single criterion in determining whether a person is an independent contractor is the degree to which the owner, rather than the independent contractor, retains the right to control the details of the work. In the present case it is apparent that Comstock, under this criterion, was indisputably an independent contractor. It is apparent from the affidavits filed in support of the defendant's motion that Northern States Power did not attempt to supervise or control the work carried out by the various contractors. Northern States Power's electrical inspector deposed that his only concern was to determine that the completed work conformed with the contract specifications. No attempt was made to retain the right to control the details of the work, and no attempt was made to exercise such detailed supervision.

This factual position advanced by Northern States Power is not disputed by the plaintiffs. Rather, it ap-

pears that it is the plaintiffs' argument that Northern States Power had the duty to supervise and control the actual work, because the work was extra-hazardous, and, accordingly, it had a nondelegable duty to make sure that the work was carried out by independent contractors with reasonable care.

Assuming that the work in which Snider was engaged was extra-hazardous, a nondelegable duty was imposed upon Northern States Power. As stated above, whether the activity was extra-hazardous is a question of law, and we agree with the trial judge's conclusion that the activity in question was not extra-hazardous in nature. The exception applies when, because of the inherently dangerous nature of the work, injurious consequences may well be expected to result unless the owner of the project assumes the affirmative duty of preventing such consequences.

This principle of imposing liability on an otherwise immune contracting owner is limited to enterprises in which there is a high degree of risk in relation to the environment or a specific unreasonable risk to third parties. The emphasis is upon the peculiar nature of the risk and on the need for special and unusual care. Prosser, *supra,* at 472–73. Restatement 2d, *Torts,* in discussing this nondelegable duty, refers to "peculiar unreasonable risk" (sec. 413, p. 384), "peculiar risk" (sec. 416, p. 395), and "special danger to others . . . inherent in or normal to the work" (sec. 427, p. 415).

Recently, in *United States Fidelity & Guaranty Co. v. Frantl Industries, Inc.,* 72 Wis.2d 478, 241 N.W.2d 421 (1976), this court recognized that the factual context which imposed a special duty because of the extra-hazardous nature of work was extremely limited. We cited with approval Comment *b,* Restatement, *supra,* sec. 413, at 385–86. That comment states:

"*b. Peculiar risk and special precautions.* It is obvious that an employer of an independent contractor may always anticipate that if the contractor is in any way negligent toward third persons, some harm to such persons may result. Thus one who hires a trucker to transport his goods must, as a reasonable man, always realize that if the truck is driven at an excessive speed, or with defective brakes, some collision or other harm to persons on the highway is likely to occur. This Section has no reference to such a general anticipation of the possibility that the contractor may in some way be negligent. It is not concerned with the taking of routine precautions, of a kind which any careful contractor could reasonably be expected to take, against all of the ordinary and customary dangers which may arise in the course of the contemplated work. Such precautions are the responsibility of the contractor; and if the employer has exercised reasonable care to employ a contractor who is competent and careful (see sec. 411), he is not required to provide, in the contract or otherwise, that the contractor shall take them.

"This Section is concerned with special risks, peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize the necessity of taking special precautions. The situation is one in which a risk is created which is not a normal, routine matter of customary human activity, such as driving an automobile, but is rather a special danger to those in the vicinity, arising out of the particular situation created, and calling for special precautions. 'Peculiar' does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself."

It is apparent that this exception to the contracting owner's immunity is limited to situations where there are special risks peculiar to the work to be done or arising out of the character or the type of place where the work is performed.

The plaintiffs' affidavits, which purport to show that the work was extra-hazardous are based substantially,

not on an allegation that the work Snider was doing at the time of his injury was extra-hazardous, but rather on the inherently hazardous nature of working in the construction of a nuclear power plant and the hazards to which an electrician may be exposed in the performance of the duties peculiar to that craft. In the instant case, however, the risk to which Snider was exposed was not related to the hazards that would be experienced in working with high voltage or working at unusual heights. The hazard here was one which could be encountered typically in the work of any construction worker.

The activity in which Snider was engaged at the time of the injury required him to be working on the top of a metal cabinet which was to be raised by a sling to a pediment not more than 18 inches high. The hazard was created by the fact that the plywood spreader placed on top of the cabinet to prevent pinching in by the sling was too large and it tipped when the plaintiff backed up and put his weight upon the overhang.

The negligence here would appear to be of a very ordinary nature, both in respect to negligence of whoever was responsible for the oversized spreader and the contributory negligence of the plaintiff, who had clearly been informed of the risk. The negligence or hazard which caused the injury was in no way related to anything inherent in power plant construction or resultant from any of the risks that might ensue from doing electrical work. Certainly, if the use of too large a spreader is looked upon as causal negligence, that negligence is not inherent in the work. Moreover, there is no evidence whatsoever to show that Northern States Power was even aware that a spreader was being used.

It is clear from the undisputed facts that the activity in which the plaintiff was engaged when he fell some 90 inches to the floor was not inherently dangerous or

extra-hazardous; and, accordingly, no nondelegable duty was imposed upon Northern States Power which would abrogate the usual immunity of one who hires an independent contractor.

As stated above, Northern States Power retained no more than a very generalized right of supervision and inspection. No specific directions were ever given in respect to the details of the work done by the contractors. Such generalized right of supervision and inspection does not constitute sufficient retained control to impose liability upon an owner. *Potter v. Kenosha*, 268 Wis. 361, 68 N.W.2d 4 (1955); *Mueller v. Luther*, 31 Wis.2d 220, 142 N.W.2d 848 (1966).

The plaintiffs argue, however, that, because there was no general contractor on the project, the duty devolved upon Northern States Power to resolve any conflicts between contractors and that, accordingly, under the facts, Northern States Power retained control for this purpose. The argument made by the plaintiffs that, although Comstock knew that the spreader was too large, because it was made of plywood the jurisdiction to correct its size fell within the ambit of the carpenters and not the electricians. The plaintiffs argue, therefore, that the Comstock employees were not free to remedy the problem of the overhang occasioned by the too-large plywood spreader, because they had no jurisdiction to cut it to reduce it to the proper size. The argument is that Northern States Power was, therefore, the only party able to remedy the problem of the overhanging piece of plywood, and since it failed to correct the situation, it was liable for this omission. This position is unsupportable.

Only a hypothesis is posed, and no proof is submitted by affidavit or otherwise to show that only the carpen-

ters could correct the missizing of the spreader. Moreover, there was no evidence whatsoever to show that Northern States Power was aware of the oversized spreader; and, accordingly, it had no opportunity to remedy the problem, even if the plaintiffs' theory were otherwise sound.

Basically, however, Northern States Power, under the facts revealed by the affidavits, never directed the use of a spreader or directed in any way how Comstock was to proceed in respect to placing the cabinets on the pediments.

Additionally, there is nothing to show Comstock did not have the complete freedom to secure a proper-sized spreader from the carpenters. The affidavits fail to reveal how the oversized spreader was obtained, and it is reasonable to assume that it was presented to Comstock on the basis of Comstock's specifications. The affidavits indicated that there were cabinets of two different sizes involved, and the spreader used at the time of this accident would have been of the appropriate dimensions for the larger cabinets. It is not too speculative to assume that, if Comstock had ordered the appropriately sized spreaders for each set of cabinets, they could have been obtained.

There is no evidence whatsoever to connect Northern States Power with either the use of the spreaders or with the responsibility of directing the carpenters union to furnish the proper spreaders. Such a duty might have been triggered by either Northern States Power's knowledge of the facts or upon a specific request by Comstock, but neither of these factors appear in the record.

The plaintiffs place a great deal of emphasis on the case of *Funk v. General Motors Corp.*, 392 Mich. 91, 220 N.W.2d 641 (1974). We are not convinced that this case represents a new development in tort law. It is

simply an elaboration of well established legal principles which have long been recognized in Wisconsin. The *Funk* case is an example of a situation where the owner of the project retained control and was held liable on that basis. As the Michigan court pointed out in the opinion, "General Motors exercised an unusually high degree of control over the construction project from its very inception" (at 105). Clearly, were we able to make that finding in the instant case, we would hold Northern States Power liable, but the facts in the instant case do not support that conclusion. Moreover, in *Funk,* the owner, General Motors, was aware of a high degree of risk as the result of the workers being obliged to work at great heights under hazardous conditions and without the observation of even the most routine safety precautions. It was undisputed that General Motors was fully aware of those risks.

We have no quarrel with the results of the *Funk* case, given the conclusion that General Motors was in control of the details of the construction project. A similar conclusion in the instant case in regard to Northern States Power would, however, be contrary to the undisputed facts.

We are also satisfied that the plaintiffs' reliance upon *Barth v. Downey Co., Inc.,* 71 Wis.2d 775, 239 N.W.2d 92 (1976), is misplaced. The portion of that opinion which deals with the liability under the safe place statute is not relevant here, because the plaintiffs specifically disavow any cause of action on that theory.

In respect to the imposition of common-law negligence liability of a general contractor to the employee of a subcontractor, this court pointed out that liability would have to be predicated upon affirmative acts of negligence. The court stated:

"In a third-party action against a general contractor brought by an employee of a subcontractor, there would

need to be . . . an affirmative act of negligence that increased the risk of injury." *Barth, supra,* at 783.

While the plaintiffs argue that the failure "to furnish supervisory control over its various contractees" constituted affirmative negligence, we conclude that that argument defies the commonly accepted meaning of "affirmative." Even were Northern States Power negligent in this respect, its negligence would be in respect to omission and not commission. The *Barth* case is inapplicable to the facts here.

We conclude that, in the instant case, in respect to the activities carried on by Snider at the time of the injury, Comstock was an independent contractor and Northern States Power, which employed Comstock, incurred no liability as a consequence of Comstock's alleged negligence. Neither the extra-hazardous activity exception nor the retained-control exception to Northern States Power's immunity as a hirer of an independent contractor applies to the facts at issue; and the trial judge, on a proper view of the law, entered summary judgment for the defendant, dismissing the plaintiffs' complaint.

*By the Court.*—Judgment affirmed.

BEILFUSS, C. J., took no part.