COURT OF APPEALS
DECISION
DATED AND FILED

June 28, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1045**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV361

IN COURT OF APPEALS
DISTRICT II

---

JUAN DELGADO,

    PLAINTIFF-APPELLANT,

  V.

ROBERT DVORAK, JR., VICTORIA DVORAK AND ALLSTATE PROPERTY AND CASUALTY INSURANCE CO.,

    DEFENDANTS-RESPONDENTS.

---

APPEAL from a judgment of the circuit court for Walworth County: LEE S. DREYFUS, JR., Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings.*

Before Neubauer, Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Juan Delgado appeals a grant of summary judgment in favor of Robert Dvorak, Jr., Victoria Dvorak, and Allstate Property and Casualty Insurance Company (collectively, "Dvorak"). We conclude the circuit court appropriately granted summary judgment on Delgado's asserted violation of the safe-place statute, WIS. STAT. § 101.11(1) (2021-22).[1]

¶2 We also conclude summary judgment was inappropriate on Delgado's ordinary negligence claim as the circuit court improperly foreclosed liability based on its conclusion that Dvorak owed no duty to Delgado. Contrary to the circuit court's determination, it is well established in Wisconsin that all persons have a duty of reasonable care to refrain from acts that unreasonably threaten the safety of others. Rather than curtailing liability based on the absence of a duty, Wisconsin uses six public policy factors to determine when a defendant should be absolved of his or her otherwise negligent conduct. Accordingly, we reverse that portion of the judgment and remand for further proceedings.

## BACKGROUND[2]

¶3 Dvorak hired PNR Painting Plus, Inc. (PNR), to paint a building exterior at his residence in Lake Geneva. Delgado was one of the painters on the job, which lasted two to three weeks. Delgado had been a painter for fifteen years and had used ladders his entire career, utilizing standard safety features,

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] In accordance with our standard of review, the facts set forth in this section are those facts most favorable to Delgado as the nonmoving party.

equipment, and protocols. PNR provided the ladders and equipment that Delgado used, and Delgado testified that his supervisors "directed and controlled" his work.

¶4 On the last day of the job, Dvorak gave the painters a list of work he wanted performed. He had previously spoken with the painters directly only a few times. Dvorak requested that Delgado touch up the paint on a particular peak of the house, necessitating the use of an extension ladder. The ladder was equipped with metal claws, which Delgado wanted to use to ensure the ladder was stable.[3] Dvorak instructed Delgado not to use the claws on the driveway as, according to Delgado's testimony, they would have dug "a good half inch" into the fresh blacktop. Instead, Dvorak told him to use the rubber side of the ladder feet. Dvorak also prohibited Delgado from drilling a piece of wood into the home's fascia that could be tied to the ladder for stability, and he told Delgado "he did not want the ladder in the soil … on his flower bed area."

¶5 Delgado asked his coworker to serve as a spotter to make sure that the ladder was stable and "didn't kick out." Delgado nonetheless fell from the ladder at a height of approximately thirty feet and was injured.

¶6 As relevant here, he brought suit against Dvorak, alleging a violation of the safe-place statute and ordinary negligence. Dvorak moved for summary judgment on those claims. Following a hearing, the circuit court ordered Delgado's negligence claim dismissed based on Delgado's failure to establish a duty on Dvorak's part, but it held the safe-place claim in abeyance subject to

---

[3] Delgado testified "the bottoms of that ladder have … safety feature[s] that are claws typically to either level out or dig in to increase stability on the ladder … under the appropriate circumstances."

additional briefing. Following an additional hearing, the court ordered Delgado's safe-place claim dismissed. Delgado now appeals.

## DISCUSSION

¶7    We review a grant of summary judgment de novo. *Estate of Paswaters v. American Fam. Mut. Ins. Co.*, 2004 WI App 233, ¶13, 277 Wis. 2d 549, 692 N.W.2d 299. Summary judgment is appropriate when the moving party is entitled to judgment as a matter of law and no genuine issue of material fact exists. WIS. STAT. § 802.08(2). At the summary judgment stage, all facts and reasonable inferences from those facts are viewed in the light most favorable to the nonmoving party. *Bohm v. Leiber*, 2020 WI App 52, ¶8, 393 Wis. 2d 757, 948 N.W.2d 370.

¶8    We begin with Delgado's safe-place claim. Delgado recites wholesale WIS. STAT. § 101.11(1), which contains myriad provisions designed to ensure workplace safety. Where it controls, the safe-place statute "imposes a more stringent duty of care than the ordinary care otherwise applicable to one's conduct." *Hofflander v. St. Catherine's Hosp.*, 2003 WI 77, ¶87, 262 Wis. 2d 539, 664 N.W.2d 545.

¶9    Delgado's brief is unclear as to which of the safe-place provisions he is relying on. His arguments and case law citations vacillate between different provisions. At some points, he appears to rely on the statutory directive that "every owner of a place of employment or a public building … shall so construct, repair or maintain such place of employment or public building as to render the same safe." WIS. STAT. § 101.11(1)). At other points, he seems to argue the operative provision is the one that requires an employer to "furnish a place of employment which shall be safe for employees therein and for frequenters

4

thereof." ***Id.*** We reject both approaches and conclude the circuit court properly granted summary judgment on his safe-place claim.

¶10    To the extent Delgado relies on the statutory directive requiring a place of employment or a public building to be constructed, repaired, or maintained in such a way as to render it safe, it does not encompass the alleged negligence here. Liability under that directive covers two types of property conditions that cause injury: "(1) structural defects; and (2) unsafe conditions associated with the structure of the building." ***Crisanto v. Heritage Relocation Servs.***, 2014 WI App 75, ¶20, 355 Wis. 2d 403, 851 N.W.2d 771. There is no allegation here that a structural issue produced the injury.[4]

¶11    Delgado's reliance on the general duty of an employer to furnish a safe place of employment for employees and frequenters likewise fails. An employer can be a person who has "control or custody of any … place of employment," *see* WIS. STAT. § 101.01(4), and a work site can constitute a temporary place of employment, *see* ***Barth v. Downey Co.***, 71 Wis. 2d 775, 778, 239 N.W.2d 92 (1976). But cases have consistently held that to be liable under the safe-place statute for keeping an unsafe place of employment, the defendant must have a profit-making motive. ***Ruppa v. American States Ins. Co.***, 91 Wis. 2d 628, 639, 284 N.W.2d 318 (1979); ***Voeltzke v. Kenosha Mem'l Hosp., Inc.***, 45 Wis. 2d

---

[4] The closest Delgado comes on this point is by quoting his expert's report opining that the "lack of slip resistance on the asphalt pavement was an unreasonable unsafe condition on the property." Delgado's claim, however, does not appear to be that the pavement was inherently unsafe. Rather, his expert's opinion was that "Dvorak reasonably should have known that with the restriction of not being able to utilize the claws that the condition on the pavement was not reasonably safe when using an extension ladder with rubber footing only." The additional prohibition on the use of the ladder's safety mechanism brings this outside the foregoing aspect of the safe-place statute.

271, 278-80, 172 N.W.2d 637 (1969). The fact that PNR's employees were using the premises for profit-making purposes does not make Dvorak liable as the owner of a place of employment. *See Voeltzke*, 45 Wis. 2d at 280; *see also Rogers v. City of Oconomowoc*, 24 Wis. 2d 308, 315, 128 N.W.2d 640 (1964); *Haerter v. City of West Allis*, 23 Wis. 2d 567, 570, 127 N.W.2d 768 (1964).

¶12    Moreover, Delgado has failed to create a genuine issue of material fact regarding whether Dvorak exercised the requisite control of the premises under the safe-place statute. Though Delgado was not Dvorak's employee, "[a]n owner … can owe a duty under the safe-place statute to a frequenter when a hazardous condition is created, but only if the owner … has reserved a right of supervision and control." *Barth*, 71 Wis. 2d at 778-779. Delgado argues it is this right of supervision and control that makes Dvorak liable for violating the heightened duties imposed by the safe-place statute.

¶13    But "[m]ere possession is not the equivalent of control or custody." *Novak v. City of Delavan*, 31 Wis. 2d 200, 207, 143 N.W.2d 6 (1966). The concept of ownership as used in the safe-place statute implies an "ever present duty" to correct safety issues with the premises. *Id.* (citing *Freimann v. Cumming*, 185 Wis. 88, 91, 200 N.W. 662 (1924)). Though Dvorak instructed Delgado on various measures he did not want employed, we are unpersuaded that he exercised a degree of supervision and control of the work so as to subject himself to the heightened duties of the safe-place statute. *See Potter v. City of Kenosha*, 268 Wis. 361, 372, 68 N.W.2d 4 (1955) (holding that when an owner reserves only a right of inspection, he or she does not become liable for the creation of a hazardous condition on the premises); *see also Lee v. Junkans*, 18 Wis. 2d 56, 60-61, 117 N.W.2d 614 (1962).

6

¶14    Resolution of the safe-place allegations only partially answers the question of whether summary judgment was appropriate, however.  The safe-place statute does not create a cause of action; it "merely lays down a standard of care and if those to whom it applies violate the provisions thereof they are negligent." *Krause v. Veterans of Foreign Wars, Post No. 6498*, 9 Wis. 2d 547, 552, 101 N.W.2d 645 (1960) (citation omitted).  Even when, as here, the heightened duties of the safe-place statute do not apply, Dvorak could still be liable under ordinary negligence principles.  The four required elements of an actionable negligence claim are: (1) the existence of a duty of care on the part of the defendant; (2) a breach of that duty of care; (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injuries; and (4) actual loss or damage suffered as a result of the breach.  *Nichols v. Progressive N. Ins. Co.*, 2008 WI 20, ¶11, 308 Wis. 2d 17, 746 N.W.2d 220.

¶15    At the summary judgment hearing, the circuit court expressed confusion regarding the basis for Dvorak's alleged duty.  The court repeatedly asked Delgado to identify what duty Dvorak specifically owed to Delgado—a question that was never fully briefed.  But an analysis that focuses on whether the alleged tortfeasor had a duty to the injured party "is incorrect under Wisconsin law.  In Wisconsin, everyone has a duty to act with reasonable care." *Gritzner v. Michael R.*, 2000 WI 68, ¶24 n.4, 235 Wis. 2d 781, 611 N.W.2d 906.  Put another way, "[i]n this state all persons have a duty of reasonable care to refrain from those acts that unreasonably threaten the safety of others." *Smaxwell v. Bayard*, 2004 WI 101, ¶32, 274 Wis. 2d 278, 682 N.W.2d 923 (citations omitted).  Among other things, this broad formulation of duty in Wisconsin means that summary judgment "is usually inappropriate on the question [of] whether a party was

negligent." ***Danks v. Stock Bldg. Supply, Inc.***, 2007 WI App 8, ¶16, 298 Wis. 2d 348, 727 N.W.2d 846.

¶16    The duty of ordinary care encompasses the concept of foreseeability, "in that a reasonable person exercising ordinary care would have foreseen injury as a consequence of his act." ***Hoida, Inc. v. M & I Midstate Bank***, 2006 WI 69, ¶30, 291 Wis. 2d 283, 717 N.W.2d 17.  And the duty is always informed by "what would be reasonable given the facts and circumstances of the particular claim at hand." ***Id.***, ¶32.  Thus, the duty "may depend on the relationship between the parties or on whether the alleged tortfeasor assumed a special role in regard to the injured party." ***Id.***

¶17    Here, Delgado faces an additional hurdle in that he was performing work on behalf of a third-party contractor when he was injured.  Wisconsin case law establishes a general rule that "one who hires an independent contractor is not liable in tort for injuries sustained by an independent contractor's employee while he or she is performing the contracted work." ***Danks***, 298 Wis. 2d 348, ¶17.  However, an exception to this general rule exists when the plaintiff can show that the owner committed "affirmative acts of negligence" that increased the risk of harm to the injured party. ***Id.***  "[A]cts of omission" are insufficient, as is "'passive inaction or a failure to take steps to protect' the plaintiff from harm." ***Estate of Thompson v. Jump River Electr. Coop.***, 225 Wis. 2d 588, 601, 593 N.W.2d 901 (1999) (citation omitted).

¶18    Though the facts here are generally undisputed, the inferences from those facts—which inform the legal conclusion that a party was or was not negligent—create an issue for trial.  Based on the facts, a jury could reasonably conclude that Dvorak appropriately requested that the painters not cause damage

to his property while performing the work. Moreover, a jury could credit Delgado's long experience using ladders as a painter to conclude he was in a better position than Dvorak to know whether he was performing work in an unsafe manner. In other words, the jury could reasonably determine that Dvorak did not commit an affirmative act of negligence that increased the risk of harm to Delgado.

¶19 Conversely, a jury could reasonably conclude that Dvorak was negligent in his instructions to Delgado about where and how the painting could occur. The jury could conclude that Dvorak's specific directive to Delgado about where he could place the ladder, coupled with him prohibiting the use of the ladder's claws on a new driveway and stabilization using the home's fascia, were affirmative acts of negligence that increased the risk of harm to Delgado and violated Dvorak's duty of ordinary care. It could also conclude that the risk of harm was foreseeable under the circumstances. It is for the jury to decide which of these conclusions appropriately allocates liability under the facts of this case.[5]

¶20 This conclusion that a genuine dispute of material fact exists would typically end our review of the matter, but we additionally observe that our review of the appellate record suggests the focus on summary judgment was not truly on whether Dvorak owed a duty to Delgado, but on whether the law should impose liability on a homeowner under these circumstances. Wisconsin courts may step

---

[5] There is no basis, however, for a finding that Victoria Dvorak was liable under ordinary negligence principles. Delgado merely suggests that Robert Dvorak acted as an agent for his wife and that she is therefore liable to the same extent as Robert. He cites no law for this assertion, whereas Dvorak cites *Lange v. Andrus*, 1 Wis. 2d 13, 17, 83 N.W.2d 140 (1957), to the contrary (holding that "[t]he mere fact of marriage does not empower the husband to act as agent for the wife."). Accordingly, we conclude summary judgment was properly granted in favor of Victoria Dvorak on Delgado's negligence claim.

in to curtail liability in six circumstances: (1) the injury is too remote from the negligence; (2) the injury is wholly out of proportion to the tortfeasor's culpability; (3) in retrospect, it appears too highly extraordinary that the negligence should have resulted in the harm; (4) allowing recovery would place too unreasonable a burden on the tortfeasor; (5) allowing recovery would be too likely to open the way for fraudulent claims; and (6) allowing recovery would enter a field that has no just or sensible stopping point. *Gritzner*, 235 Wis. 2d 781, ¶¶26-27. When older cases hold that an actor had no "duty" to the injured party, that determination "is essentially one of public policy" based on the six factors described above, rather one based on duty or causation. *Rockweit by Donohue v. Senecal*, 197 Wis. 2d 409, 425, 541 N.W.2d 742 (1995).

¶21 At the summary judgment hearing, the circuit court expressed dismay at Delgado's responses to its questioning, emphasizing that the "duty" Delgado was proposing was vague and that it would be unreasonable to impose liability merely because a homeowner had asked a contractor not to damage property. Dvorak invited the court to consider the implications if Delgado's position were "carried forward," asserting it would create "an absurd end point" if a homeowner had a duty to "acquiesce to whatever work they hire a person to do by whatever means they choose to do it." These inquiries and arguments bear the indicia of a public policy analysis rather than a determination based on the absence of a duty.

¶22 While we could independently consider whether public policy bars liability under the circumstances of this case, *see Fandrey ex rel. Connell v. American Fam. Mut. Ins. Co.*, 2004 WI 62, ¶29, 272 Wis. 2d 46, 680 N.W.2d 345, for three reasons we conclude the circuit court should be given the first opportunity to apply the correct framework. First, this court benefits from a

circuit court's summary judgment analysis. ***Summers v. Touchpoint Health Plan, Inc.***, 2008 WI 45, ¶15, 309 Wis. 2d 78, 749 N.W.2d 182. Second, the circuit court should be given the opportunity to identify which of the six public policy considerations, if any, it concludes are applicable to preclude liability. *See **Fandrey***, 272 Wis. 2d 46, ¶30. Third, the court deserves the opportunity to consider whether the case should first be submitted to the jury before determining whether public policy considerations preclude liability. *See **Gritzner***, 235 Wis. 2d 781, ¶26.

¶23 We stress that our remand in this case is open ended, encompassing whatever proceedings the circuit court deems necessary to resolve the negligence claim as set forth above. Our holding is limited to our conclusion that summary judgment was not appropriate on duty grounds, and therefore further proceedings are necessary. We do not mandate that the circuit court decide on remand—absent an appropriate motion—whether public policy precludes liability, nor do we express any opinion regarding the merits of applying public policy to preclude liability in this case. Our discussion of public policy is intended merely to illustrate that the parties' arguments and the circuit court's conclusion appear to be directed at that inquiry rather than the question of duty.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.