LOFY (PHYLLIS), Administratrix of the Estate of
MATTHEW G. LOFY, and others, Plaintiffs and Ap-
pellants, V. JOINT SCHOOL DISTRICT NO. 2, CITY OF
CUMBERLAND, and others, Defendants and Re-
spondents: TOFTNESS and others, Defendants and
Third-Party Plaintiffs: CSUTI (formerly PHYLLIS
LOFY), Special Administratrix, and others, Third-
Party Defendants.

*No. 194. Argued March 6, 1969.—Decided April 1, 1969.*
(Also reported in 166 N. W. 2d 809.)

254

For the appellants there were briefs and oral argument by *Daniel I. D'Amico* of Cumberland.

For the respondents there was a brief by *Wilcox & Wilcox of Eau Claire,* and oral argument by *Francis J. Wilcox.*

BEILFUSS, J. The issue is:

Is the school district liable for negligent operation of a bus contracted for with a licensed transportation company to transport students incidental to an extracurricular school activity?

To answer this question we determine whether the transportation company became an independent contractor and, if so, whether the duties of the district to third persons in the transportation of students to an extracurricular activity can be delegated.

In addition to the common law of *respondeat superior* the Wisconsin statutes dealing with school transportation and municipal liability must be considered.

Transportation by school districts is, in the main, provided for and controlled by statutory enactment.

Statutes applicable, in part, are as follows: [1]

Sec. 40.53 (4) "TRANSPORTATION FOR EXTRACURRICULAR ACTIVITIES. (a) Any school district or other governmental agency authorized to operate or contract for the operation of a school bus *may provide transportation* for pupils; their parents or guardians; members of the faculty and school doctors, dentists and nurses; in connection with any extracurricular school activity, such as a school athletic contest, school game, school outing or

---

[1] In the 1967 session of the legislature the statutes dealing with school transportation were revised and renumbered and now appear in ch. 121, Stats.

school field or any other similar school trip when: (Emphasis supplied.)

"1. A school bus which is regularly used by or for such district or agency is used for such transportation, and such transportation is under the immediate supervision of a competent adult employe of such district or agency and such bus is operated by a competent driver regularly used as a bus driver by such district or agency;

"2. A school operated by such district or agency has an actual educational interest in such activity;

"3. Such use does not extend more than 50 miles beyond the boundary of the state, but this restriction does not apply to any such use by the Wisconsin school for the deaf;

"4. The principal or other person with comparable authority authorizes such use; and

"5. Such school bus is insured as defined in s. 40.57.
"
". . .

"(5) METHODS OF TRANSPORTATION; CONTRACTS. Transportation may be provided by the school board. . . .

"(a) By contract with a common carrier, . . ."

Sec. 40.57 "Compulsory insurance on school busses. (1) No motor vehicle shall be used as a school bus unless a policy of bodily injury and property damage liability insurance, issued by an insurer authorized to transact business in this state, is maintained thereon. Such policy shall provide bodily injury liability coverage with limits of not less than $10,000 for each person, and, subject to such limit for each person, total limits as follows:
"
". . .

"(e) $100,000 for each accident for each such motor vehicle having a seating capacity of more than 36 but less than 50 passengers;
"
". . .

"(2) Such policy shall also provide property damage liability coverage with a limit of not less than $5,000.

"(3) Coverage under such policy of insurance shall apply:
"
". . .

"(b) To the transportation of such persons in connection with any extracurricular school activity, such as a school athletic contest, school game, school outing or school field or any other similar school trip when made in conformity with s. 40.53 (4). But when so used, un-

less otherwise provided in the policy, such insurance shall apply only to accidents occurring in the state and not to exceed 50 miles beyond its boundaries.

" . . .

" (9) This section shall not apply to vehicles operated by common carriers certificated under ch. 194, where such vehicles are used under contract pursuant to the provisions of ss. 40.53 and 40.55, provided such common carrier has complied with the provisions of s. 194.41 or 194.42."

Sec. 345.05 "State and municipal liability for motor vehicle accidents. (1) In this section the following terms have the designated meanings:

"(a) 'Municipality' means any county, city, village, town, school district (as enumerated in s. 67.01 (1)), sewer district, drainage district, community center and, without restriction because of failure of enumeration, any other political subdivision of the state.

" . . .

" (2) Any of the following may file a claim for damages against the state or municipality concerned and the governing body thereof may allow, compromise, settle and pay the same:

"(a) A person suffering any damage proximately resulting from the negligent operation of a motor vehicle owned and operated by the state or a municipality, which damage was occasioned by the operation of such motor vehicle in the course of its business. For the purposes of this subsection, a motor vehicle shall be deemed owned and operated by the state or a municipality if such vehicle is either being rented or leased, or is being purchased under a contract whereby the state or municipality will acquire title."

We agree with the conclusion reached by the trial court that the legislature did intend that a school district can delegate to others its tort responsibility or liability by contract.

The school district is not obligated to provide transportation for extracurricular school events. The statute (sec. 40.53 (4) (a)) provides the school district "may provide transportation" for students for extracurricular activities. The word "may" used in its context in the

statute here makes it discretionary as to whether the school provides such transportation.

In the event the school does decide to provide for the transportation, the statute (sec. 40.53 (5) (a)) gives it alternative methods including "[b]y contract with a common carrier," provided such common carrier has the liability insurance coverage required by sec. 194.41 or 194.42, Stats. The insurance required by these sections is equal to or in excess of that required for regular school buses.

There is nothing in this statutory scheme which prohibits a school from entering into a contract with a common carrier for transportation of students (and others) for extracurricular school activities; on the contrary we believe the legislature has given school districts specific authorization to do just that.

The affidavits in support of the motion for summary judgment make clear that Wisconsin Northern Transportation Company was a common carrier and did comply with the insurance requirements of secs. 194.41 and 194.42, Stats.

The appellants contend that the transportation company, by the terms of and in the performance of the contract, lost its character as a common carrier because the facilities used were not available to the public generally over a specified route. We do not believe it makes a material difference whether the transportation company was a common carrier or a contract carrier for this specific trip. The transportation company had the general or overall designation of common carrier. The fact that a very limited amount of its equipment for one designated trip was used to perform a contract which was consistent with the more limited legal concept of a contract or private carrier did not destroy its overall character as a common carrier. We are of the opinion the statutory designation of a common carrier was for the purpose of affording the school district a means of

assuring the required liability insurance as indicated by sec. 40.57 (9), Stats.

The contract entered into between the school and the transportation company was statutorily permissible and did afford the insurance protection required by statute.

We now consider whether the transportation company was an independent contractor.

A recent statement of this court appears in *Bond v. Harrel* (1961), 13 Wis. 2d 369, 374, 108 N. W. 2d 552:

"Whether a person is an agent or an independent contractor has been decided many times. See Anno. 19 A. L. R. 226, for an exhaustive discussion. Several factors must be taken into consideration in determining the question. The most-important single indicium is who has retained the right to control the details of the work. *Madix v. Hochgreve Brewing Co.* (1913), 154 Wis. 448, 143 N. W. 189. In *James v. Tobin-Sutton Co.* (1923), 182 Wis. 36, 39, 195 N. W. 848, this court, after reviewing the cases, approved the following language from the note in 19 A. L. R., p. 235, sec. 4:

" ' "An independent contractor is a person employed to perform work on the terms that he is to be free from the control of the employer as respects the manner in which the details of the work are to be executed." ' "

The contract did not reserve any significant control of the details to the school. The school only designated the time and place of departure—5:30 a. m. March 18th at the school; the approximate arrival time at the destination—12:30 p. m. Field House at Madison; route—best route; and return departure time and place—Field House March 20th after the last game. This detail of control seems to be almost the absolute minimum. With less information it is questionable that there could have been a trip or a contract at all.

The specific buses, the driver, the route, the en route stops, the manner of driving, all significant factors as to possible liability, were within the complete control of the transportation company and its employees. The only duty assigned or performed by the faculty chaperons

was to keep order among the students and make sure they got on the bus.

The transportation company was an independent contractor during the trip in question.

The general rule is that one who contracts for the services of an independent contractor is not liable to others for the acts of the independent contractor.[2]

There are exceptions to the rule, such as where services contracted for involve inherent danger, where the control of the safe place of a structure is involved and the control has not been relinquished or where the work contracted for was a nondelegable duty of the principal.[3]

The operation of a bus between Cumberland and Madison over modern highways cannot be considered inherently dangerous.

The appellants urgently contend that sec. 345.05, Stats., (quoted above) creates absolute liability on the part of the school district. We disagree. Sec. 345.05 and its predecessor, sec. 85.095, have been existent, in substance, for several years. The obvious purpose was to abrogate the doctrine of municipal immunity *in the operation of motor vehicles* under the terms of the statute [4] and to create an exception to the overall doctrine of municipal immunity.[5]

The appellants argue that the language of sec. 345.05, Stats., "For the purposes of this section, a motor vehicle shall be deemed owned and operated by the . . . municipality if such vehicle is either being rented or

[2] *Kruse v. Weigand* (1931), 204 Wis. 195, 235 N. W. 426; 57 C. J. S., *Master and Servant*, p. 353, sec. 584.

[3] *See* 57 C. J. S., *Master and Servant*, p. 365, sec. 591; *Presser v. Siesel Construction Co.* (1963), 19 Wis. 2d 54, 58, 119 N. W. 2d 405.

[4] *See Laffey v. Milwaukee* (1959), 8 Wis. 2d 467, 471, 99 N. W. 2d 743.

[5] It is doubtful that the statute is necessary to accomplish this purpose by virtue of the general abrogation of muncipal immunity in *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 115 N. W. 2d 618. However, this question is not at issue herein.

leased, . . ." makes it impossible for the school district to absolve itself from liability for negligent acts of others.

In this instance the vehicle alleged to be negligently operated was neither leased nor rented but chartered by contract. The charter contract did not retain the control usually associated with a lease or rental agreement.

The underlying purpose of the statutes has been complied with. The trip was permissible. The liability insurance protection to users of the highway contemplated by the legislature has been afforded by the insurance protection acquired by the transportation company. The duty the school district owed to other users of the highway can be and was delegated to the transportation company as an independent contractor.

*By the Court.*—Judgment affirmed.