N. PATRICK CROOKS, J.
¶ 1. The question we address in this case is whether Robert Luethi, who hired an independent contractor to spray herbicide on his property, may be held liable to his neighbors, the Brandenburgs, for the extensive, permanent damage they claim the spraying caused to 79 trees on adjoining property. Bruce Brandenburg, who owned property at the top of a steep slope above Luethi's pasture, claimed damage to all eight trees on his land; Kelli Brandenburg, who also owned property at the top of the slope, claimed damage to 71 of 115 trees on her land.
¶ 2. More specifically, we must determine whether this case falls into one of the exceptions to the well-settled independent contractor rule that states that, in general, "one who contracts for the services of an inde *417 pendent contractor is not liable to others for the acts of the independent contractor."[1]
¶ 3. Under one of those exceptions, the "inherently dangerous activity" exception, an employer of an independent contractor may be liable for the torts of an independent contractor if the activity of the independent contractor is inherently dangerous. This exception is what the parties disagree about. Plaintiffs say the exception is good law and it applies here because this activity is inherently dangerous. Luethi says that it is not good law and does not apply here. Further, he argues that the exception is unworkable and should be altered or abandoned altogether.
¶ 4. The "inherently dangerous" exception has long been recognized in treatises, in our case law and in case law from other jurisdictions. The test for whether an activity is inherently dangerous has two parts. An activity is inherently dangerous 1) if the activity poses a naturally expected risk of harm and 2) if it is possible to reduce the risk of the activity to a reasonable level by taking precautions.[2]
¶ 5. For the reasons explained below, we see no reason to abandon our precedent concerning the "inherently dangerous" exception. It is a widely accepted and long-established rule of negligence law that is rooted in good policy. The rule imposes liability on the parties who are in the best position to take precautions to avoid harm to third parties where the activity to be done is inherently dangerous.
*418 ¶ 6. We therefore turn to the exception's application. In some negligence cases, including somewhat unusual negligence claims such as the one against Luethi, "[w]e require a plaintiff to plead facts, which if proved true, would establish the following four elements: (1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiffs injury, and (4) actual loss or damage resulting from the [breach]."[3]
¶ 7. Under Wisconsin law, "every person is subject to a duty to exercise ordinary care in all of his or her activities" and, therefore, "the elements of duty and breach are usually presented to the trier of fact in a question asking whether the defendant was negligent, and then the elements of causation and damages are addressed."[4] Thus, generally, a trier of fact in a usual negligence case is presented with three questions: was the defendant negligent?, was that negligence the cause of the harm?, and what are the damages?[5] As noted above, this case is somewhat different.
*419 ¶ 8. The threshold question is whether Luethi may be liable for the negligence of the independent contractor he hired to spray herbicides. To answer that, we have to examine the nature of the activity itself because if spraying is an inherently dangerous activity, then it gives rise to a duty of ordinary care for Luethi for the acts of the independent contractor. If, on the other hand, the activity is not inherently dangerous (and if no other exceptions apply), the duty of ordinary care is that of the independent contractor, and Luethi cannot be liable for the acts of the other person.
¶ 9. In many cases, this determination of whether a given activity is inherently dangerous will be one of fact, but in the unusual case where the facts are undisputed and no reasonable jury could find otherwise,[6] it is appropriate to decide it as a question of law. As the relevant suggested verdict form in Wisconsin Jury Instruction — Civil 1022.6 notes, "There are times when the [question about inherent dangerousness] will not be necessary."
¶ 10. The record contains uncontroverted evidence that the chemical used here is capable of killing *420 56 "woody plant" species, including oak, birch, poplar and maple trees. It therefore poses a "naturally expected risk of harm" to trees on neighboring properties. The record also contains undisputed testimony and exhibits showing that it is possible to reduce that risk by taking precautions. Therefore, both parts of the inherently dangerous test are satisfied, and we agree with the court of appeals that under Wisconsin law, under these circumstances, "spraying the herbicides was an inherently dangerous activity, and, as a result, the general rule of nonliability for an independent contractor's torts did not apply."[7]
¶ 11. The threshold question in the negligence determination is resolved here in favor of a determination that Luethi may be liable for the acts of the independent contractor on the grounds that the spraying here was an inherently dangerous activity — it posed a risk of naturally expected harm, and it was possible to reduce the risk. With that question resolved, the negligence claim may now proceed, with the plaintiffs having the opportunity to show that Luethi failed to use ordinary care with regard to the activity and that such failure was the cause of the damage claimed,[8] followed by an appropriate damage question.
*421 ¶ 12. This is consistent with the approach applied in Wisconsin Jury Instruction — Civil 1022.6 and the Suggested Verdict Form 1 (Inherently dangerous activity). It is also consistent with the Restatement sections on which we have relied in the prior cases addressing this question.
¶ 13. The Restatement sections describe a framework that imposes liability on an employer for the acts of the independent contractor where three facts are established: that there exists a naturally expected risk of harm, that there exists an opportunity to take precautions against the harm, and that the employer "knows or has reason to know" that it poses a risk and requires precautions. The concurrence/dissent rightly points out that Wisconsin case law clearly adopts the "inherently dangerous exception" as described in the Restatement sections discussed herein. However, it is equally clear that Wisconsin courts have rejected a strict liability approach in "inherently dangerous" cases. Adopting such an approach would erase the distinction between "inherently dangerous" and "extrahazardous activity," which we explicitly declined to do in Wagner. Wagner v. Cont'l Cas. Co., 143 Wis. 2d 379, 392-93, 421 N.W.2d 835 (1988).
¶ 14. At this point in the case, there has been no determination by a trier of fact of what Luethi knew or had reason to know about the danger inherent in the work. To impose strict liability would therefore contravene the applicable section of the Restatement and change the law by erasing one requirement — making an employer liable for activities even where it is not established that the employer knew or had reason to *422 know of the danger inherent in the work. The lack of clarity on the analysis in prior cases is partly due to the fact that this particular question has not been squarely addressed because the application of the "inherently dangerous" exception has been mentioned in other contexts rather than being subjected to full analysis. Nevertheless, imposing strict liability without any resolution of the knowledge requirement, within the framework of the duty of ordinary care, is unsupported by the Restatement sections. This "knows or has reason to know" factor seems to come into play on the question of whether Luethi failed to use ordinary care with regard to the activity. No resolution of that question has been made at this point in the record; therefore, the court of appeals correctly stated that the case should be remanded for the relevant further determinations to be made, specifically whether Luethi exercised ordinary care to prevent damage to the Brandenburgs' property.
¶ 15. We therefore affirm the court of appeals and remand this matter to the circuit court for further proceedings consistent with this opinion.
I. BACKGROUND
¶ 16. Luethi hired an independent contractor who sprayed a potent herbicide — one capable of killing oak, birch, poplar and maple trees and 52 other woody species, according to its label — on part of his property to rid it of a plant called prickly ash, which had grown thickly on the property, with some plants reaching a height of seven feet. There was no written contract between Luethi and the contractor, and Luethi placed no time restrictions on the spraying company.
¶ 17. A few days after the herbicide was applied, Luethi's neighbors, the Brandenburgs, noticed that *423 leaves were falling off of the birch trees and other plants on their property. Based on an investigation that identified the herbicide as the cause of the damage,[9] they sued Luethi as well as the independent contractor, Briarwood Forestry, and its employee and its insurer.[10] The only basis in the complaint for the claim was that the independent contractor was negligent for failing to take precautions to prevent the damage to their trees— specifically, to keep the chemicals from drifting onto adjoining property.
¶ 18. The circuit court for Trempealeau County, the Honorable John A. Damon presiding, looked to a six-factor test discussed in a case from a Kansas district court that bore some factual resemblance to this case in that it also involved a claim concerning damage caused to plants by a neighbor's herbicide spraying. See Desaire v. Solomon Valley Co-op, Inc., No. 94-1271-PFK (D. Kan., Sept. 14, 1995). The circuit court, applying the *424 factors cited in that case, held that spraying herbicides was not "abnormally dangerous" or "ultrahazardous." Therefore, it held that Luethi had no duty to the Brandenburgs and that only the independent contractor could be liable for any damage the spraying caused. The circuit court therefore granted Luethi's summary judgment motion.
¶ 19. In making its ruling, the circuit court stated, "I can't find that [under] the language used in Desaire this was abnormally dangerous and I can't find this reaches the level of ultrahazardous activity[.]"
¶ 20. On appeal, the court of appeals reversed that ruling on the grounds that the circuit court had relied on an improper standard. The relevant question was, the court of appeals said, whether the activity was inherently dangerous — not whether it was abnormally dangerous or ultrahazardous. Brandenburg v. Luethi, No. 2012AP2085, unpublished slip op., ¶¶ 1, 16 (Wis. Ct. App. Apr. 23, 2013).
¶ 21. Applying the test for inherently dangerous activities that we clarified in Wagner, 143 Wis. 2d at 392-93, the court of appeals concluded that "the risk of harm" posed by spraying herbicides "is one that could be naturally expected to arise in the absence of precautions." Brandenburg v. Luethi, No. 2012AP2085, unpublished slip op., ¶ 22 (Wis. Ct. App. Apr. 23, 2013). It also concluded, "Undisputed evidence also showed that the risk of harm could be reduced to a reasonable level by taking certain precautions." Id., ¶ 23. "Consequently, spraying the herbicides was an inherently dangerous activity ...." Id., ¶ 24. Its holding was essentially that no reasonable jury could find otherwise on the facts in the record and that the circuit court had erred when it used a test derived from Restatement (Second) of Torts, Section 520. (We note that Section 520 had also been the *425 basis for the Desaire court's holding.) As the court of appeals noted, that Restatement section falls under "Strict Liability" and defines those circumstances where there can be liability "without the need of a finding of negligence." Restatement (Second) of Torts § 520 cmt. f (1977). It therefore reversed the judgment and remanded for further proceedings.
¶ 22. We granted review.
II. STANDARD OF REVIEW
¶ 23. "Whether the circuit court has applied the correct legal standard is a question of law reviewed de novo." Landwehr v. Landwehr, 2006 WI 64, ¶ 8, 291 Wis. 2d 49, 715 N.W.2d 180. As noted above, the circuit court applied the standard employed in Desaire, which, in the course of answering a different question presented, contained discussion about what factors courts consider in determining "whether a given action is abnormally dangerous." Desaire v. Solomon Valley Co-op, Inc., No. 94-1271-PFK at *4 (D. Kan., Sept. 14, 1995).
¶ 24. The circuit court granted Luethi's summary judgment motion. "There is a standard methodology which a trial court follows when faced with a motion for summary judgment." Green Spring Farms v. Kersten, 136 Wis. 2d 304, 314-15, 401 N.W.2d 816 (1987). "The first step of that methodology requires the court to examine the pleadings to determine whether a claim for relief has been stated." Id.
If a claim for relief has been stated, the inquiry then shifts to whether any factual issues exist. Under section 802.08(2), Stats., summary judgment must be entered *426 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
Id. "When this court is called upon to review the grant of a summary judgment motion ... we are governed by the standard articulated in section 802.08(2), and we are thus required to apply the standards set forth in the statute just as the trial court applied those standards." Id. at 315.
III. DISCUSSION
¶ 25. The claims in this case are simple negligence claims. The only twist is the fact that it involves an independent contractor. The legal principles for negligence cases involving independent contractors are discussed in the treatise Prosser and Keeton on Torts. In the section concerning negligence and independent contractors, the treatise writers describe how the courts moved from a general rule of liability for one hiring an independent contractor to the present general rule of non-liability. W. Page Keeton et al., Prosser and Keeton on Torts § 71, at 509 (5th ed. 1984). The independent contractor exception to that general rule appears in its current form in cases as early as 1851. Id. at 509, n.4. The treatise authors state that courts "continúen to repeat the general rule of nonliability with exceptions" and state that the exceptions "overlap and shade into one another." Id. at 510.
¶ 26. The treatise explains the origins of the inherently dangerous activities exception, in an 1876 case,[11] which held the employer could be found liable *427 for the negligence of the contractor, and it notes that " '[inherent danger' converges not only with 'special precautions' but also with 'non-delegable duty.'" Id. at 512 n.44.
¶ 27. By 1895, we had recognized as "well-established" both the independent contractor rule and the "inherently dangerous" exception. In a case involving extensive flood damage to property allegedly caused by someone opening a dam in order to drive logs down a river, we stated that we had "repeatedly held"
that the well-established general rule is to the effect that, where one person employs another to furnish the materials and do a specific job of work as an independent contractor, he does not thereby render himself liable for injuries caused by the sole negligence of such contractor or his servants; and that the well-recognized exception to such general rule, to the effect that where the performance of such contract, in the ordinary mode of doing the work, necessarily or naturally results in producing the defect or nuisance which caused the injury, then the employer is subject to the same liability to the injured party as the contractor.
Carlson v. Stocking, 91 Wis. 432, 436, 65 N.W. 58 (1895) (emphasis added) (quotations omitted) (citing earlier cases). The rule was stated in that case in the context of a dispute about whether the person whose acts had allegedly caused the damage was an independent contractor. Id. at 432. As detailed below, later cases continued the practice of repeatedly citing the rule of non-liability with an exception for activities that could be characterized as inherently dangerous.[12]
*428 ¶ 28. Nevertheless, Luethi argues that the law does not impose liability on him for the acts of the independent contractor in this instance, and if it does, it should not. He advances two types of arguments. First, he makes a series of arguments about why the inherently dangerous exception is not or should not be recognized in Wisconsin law, especially where homeowners are concerned. Second, he argues that even if the exception is recognized by Wisconsin law, it does not apply in this case because herbicide spraying is not an inherently dangerous activity. The Brandenburgs contend that the "inherently dangerous" exception is clearly expressed in the law, is straightforward to apply, and is consistent with good policy. They argue that it applies on the facts of this case.[13] We address the arguments in turn.
*429 ¶ 29. Luethi argues first that the inherently dangerous exception does not control because it "has been a confusing and evolving doctrine in Wisconsin, which has been described but not applied." He contends that "no precedent has applied the rule the Brandenburgs now seek to resurrect in more than 25 years," that "no applicable precedent subsequent to Lofy[14] . . . has actually applied the rule in either direction," and that in the cases cited, the rule, though stated, has never operated to allow recovery for a plaintiff.
¶ 30. Even though there may not be a Wisconsin case on all fours with the specific facts in this case, we see no reason that the accepted rule needs to be revisited.[15] The law is well-founded in the Restatement, very familiar to treatise writers, and often repeated in Wisconsin cases dating to the early nineteenth century. See Carlson, 91 Wis. 432 (citing earlier cases). In Finkelstein v. Majestic Realty Corp., 198 Wis. 527, 224 N.W. 743 (1929), which involved contractors apparently knocking loose a piece of terra cotta that fell from a balcony and killed a child below, the court observed,
It is conceded that the contractors were independent contractors, and that ordinarily the owner cannot be held liable for the negligent acts of such contractors. On the other hand, it is also clear that there are exceptions to the general rule, which consist of cases like the one herein involved, where the work itself is inherently dangerous to the public ....
Id. at 536-37.
*430 ¶ 31. We mentioned the exception again, in 1931, in Medley v. Trenton Investment Company, 205 Wis. 30, 236 N.W. 713 (1931), a case in which a landlord was sued for the wrongful death of a tenant after a contractor fumigated a neighboring apartment and the victim died from exposure to the fumes:
[I]t does not follow, because the relationship ... was that of independent contractor and employer, that the defendant may not be liable. ... As between owners and principal contractors and third persons, it seems clear, under our decisions, that the owner or principal contractor is not liable for the negligent acts of an independent contractor unless the act to be done or the work to be performed is inherently dangerous or naturally or necessarily creates the nuisance or the defect ....
Id. at 35-36.
¶ 32. The principle was invoked in Lofy by plaintiffs who sought to hold a school district liable for the alleged negligence of a bus driver who was an independent contractor. Lofy v. Joint Sch. Dist. No. 2, 42 Wis. 2d 253, 263, 166 N.W.2d 809 (1969). There we noted the rule and the "inherently dangerous" exception and then rejected the argument that it applied in that case:
The general rule is that one who contracts for the services of an independent contractor is not liable to others for the acts of the independent contractor. There are exceptions to the rule, such as where services contracted for involve inherent danger .... The operation of a bus between Cumberland and Madison over modern highways cannot be considered inherently dangerous.
Id. at 263.
*431 ¶ 33. We have also looked to the Restatement (Second) of Torts in prior cases and have examined the principles set forth in sections 413, 416 and 427 in resolving questions arising in negligence claims involving independent contractors.[16]
Sections 416 and 427 impute the independent contractor's negligence to the principal employer irrespective of whether the employer is himself or herself at fault on the basis that the dangerous activities involved give rise to a nondelegable duty. "They arise in situations in which, for reasons of policy, the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor."
Wagner, 143 Wis. 2d at 391 (quoting Restatement (Second) of Torts, Introductory Note to secs. 416-429). We cited to both Prosser and Keeton's treatise and the Restatement for these principles in Snider v. Northern States Power Co., 81 Wis. 2d 224, 233, 260 N.W.2d 260 (1977):
This principle of imposing liability on an otherwise immune contracting owner is limited to enterprises in which there is a high degree of risk in relation to the environment or a specific unreasonable risk to third parties. The emphasis is upon the peculiar nature of the risk and on the need for special and unusual care. Prosser, supra, at 472-73. Restatement 2d, Torts, in discussing this nondelegable duty, refers to "peculiar unreasonable risk" (sec. 413, p. 384), "peculiar risk" (sec. 416, p. 395), and "special danger to others... inherent in or normal to the work" (sec. 427, p. 415).
*432 ¶ 34. As Snider recognized, these sections overlap in certain respects.[17]
¶ 35. Section 416 is entitled "Work Dangerous in Absence of Special Precautions" and it falls in Chapter 15, Liability of an Employer of an Independent Contractor, under the heading, "Topic 2: Harm Caused by Negligence of a Carefully Selected Independent Contractor." It states:
One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.
Restatement (Second) of Torts § 416 (1965).
*433 ¶ 36. A comment to Section 416 states in part:
There is a close relation between the rule stated in this Section, and that stated in § 427, as to dangers inherent in or normal to the work. ... The rules stated in the two Sections have been applied more or less interchangeably in the same types of cases, and frequently have been stated in the same opinion as the same rule, or as different phases of the same rule. The rule stated in this Section is more commonly stated and applied where the employer should anticipate the need for some specific precaution, such as a railing around an excavation in the sidewalk. The rule stated in § 427 is more commonly applied where the danger involved in the work calls for a number of precautions ....
Id., § 416, cmt. a.
¶ 37. Section 427 is entitled "Negligence as to Danger Inherent in the Work" and it falls under the same chapter and topic heading. It states:
One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.
Id., § 427. A comment to this section clarifies that, like the rule stated in Section 416, "the rule here stated applies only where the harm results from the negligence of the contractor in failing to take precautions against the danger involved in the work itself, which the employer should contemplate at the time of his contract." Id. § 427 cmt. d. Further, "the rule stated here has no application... as to negligence in the *434 operative details of the work which involve no peculiar risk, which the employer may reasonably assume will be carried out with proper care." Id.
¶ 38. The court of appeals concisely summarized the applicable principles derived from our case law, which has consistently referenced the Restatement sections above:
Following Lofy and Wagner, the following principles are clear: (1) a principal employer is generally not liable for an independent contractor's negligence; (2) a principal employer may be liable to a third party for the independent contractor's negligence, if the independent contractor was performing inherently dangerous work; and (3) a principal employer may be liable to the independent contractor's employee, if the independent contractor was performing extrahazardous work. The Brandenburgs are not employees of Briarwood. Thus, to hold Luethi liable for Briarwood's negligence, the Brandenburgs must show that Briarwood's work was inherently dangerous. Contrary to Luethi's assertions, they need not show that the work was extrahazardous. . . .
If the [circuit] court felt the need to reference the Restatement, it should have looked to § 427, which is directly on point....
Under Wagner and the applicable jury instruction, two elements are necessary for an activity to be considered inherently dangerous: (1) the activity must pose a naturally expected risk of harm; and (2) it must be possible to reduce the risk to a reasonable level by taking precautions. Based on the undisputed facts, we conclude as a matter of law that Briarwood's application of herbicides met this standard.
Brandenburg v. Luethi, No. 2012AP2085, unpublished slip op., ¶¶ 16, 20, 21, (Wis. Ct. App. Apr. 23, 2013) (citations omitted). We agree.
*435 ¶ 39. While it is true that in some earlier cases the distinction between the categories of "extrahazardous" and "inherently dangerous" activities appears unclear, we dispelled any confusion on that point in Wagner, when we specifically explained the difference between the two: "We do not regard an activity which is inherently dangerous because of the absence of special precautions to be synonymous with an activity that is extrahazardous. A person engaged in an activity of the first type, i.e., one that is inherently dangerous without special precautions, can take steps to minimize the risk of injury." Wagner, 143 Wis. 2d at 392.
¶ 40. In short, we have consistently acknowledged the rule and the exception that applies here. The lack of cases in which the exception has applied in precisely the way it applies here does not persuade us that the rule does not exist.[18]
¶ 41. Luethi also argues that, if the "inherently dangerous" exception is good law, homeowners and landowners should be exempt from its application because no Wisconsin cases dealing with this exception have applied it to an individual homeowner. For the reason already given — that absence of factually identical cases does not persuade us of the invalidity of the rule — we disagree. Nor has Luethi pointed us to precedent as a legal basis supporting a contrary rule if an individual homeowner is involved.
*436 ¶ 42. In a similar vein, he argues that if liability exists as to a homeowner, public policy factors[19] should preclude liability under these circumstances. Specifically, he argues that the injury is too remote from the negligence, that the injury is wildly out of proportion to the tortfeasor's culpability, that allowing recovery would place an unreasonable burden on the tortfeasor, and that allowing recovery would enter a field that has no sensible or just stopping point. In support of his public policy arguments, he relies on our holdings in Casper v. American International South Insurance Co., 2011 WI 81, 336 Wis. 2d 267, 800 N.W.2d 880, and Hoida, Inc. v. M & I Midstate Bank, 2006 WI 69, 291 Wis. 2d 283, 717 N.W.2d 17.
¶ 43. In the first case, Casper, we found the that the injury was too remote from the negligence to permit a finding of liability for Chief Executive Officer (CEO) Jeffrey Wenham, who had approved a route that was driven by Mark Wearing, a truck driver who, while under the influence of multiple drugs, caused a tragic accident:
*437 [The CEO] did not hire Wearing. He did not train Wearing. He did not supervise Wearing. In fact, he never met the man driving the truck that collided with the Caspers' vehicle that day in May. Any negligence on [the CEO's] part was remote from the Caspers' injury in terms of time, distance, and cause.
Casper; 336 Wis. 2d 267, ¶ 96.
¶ 44. In Hoida, the plaintiff sought recovery from a disbursing agent of money that was disbursed to a subcontractor who took $650,000 in construction loan proceeds without doing the work. Hoida, 291 Wis. 2d 283, ¶ 43. We declined on public policy grounds to assign liability to a disbursing agent for a construction loan, where that agent "acted solely at the direction" of the bank. We did so on the grounds that permitting recovery would place too unreasonable a burden on such agents to verify details of the progress of construction projects. Id.
¶ 45. Luethi analogizes his position to that of the CEO in Casper, for whom the ultimate harm was not reasonably foreseeable, and to the disbursing agent in Hoida, who would have been unreasonably burdened by the responsibility of checking on the progress of the work. The plaintiffs disagree that such analogies are valid.
¶ 46. We do not see the situation of a person hiring an independent contractor doing inherently dangerous work as raising the types of concerns that precluded liability in the cases Luethi cites. He cannot be compared to the CEO who did not hire or even meet the truck driver who caused the harm and whose only connection to the accident was the fact that he had approved the route the driver was on. Nor is a person who hires an independent contractor to do inherently dangerous work on his own property fairly compared to a disbursing *438 agent for a construction loan. This is true for many reasons, including that the property where the work was done was Luethi's own. Also, the construction project was of a magnitude much larger than a one-time application of herbicide.
¶ 47. Further, the public policy factors have in fact already been balanced in favor of potential liability in these cases. Public policy reasons underlie the "inherently dangerous activity" exception in the first place, as the Restatement sections discussed note. As one court observed, the "inherently dangerous" exception "accords with basic intuitions of fairness, and it is also consistent with what is often efficient economically." Huddleston by Huddleston v. Union Rural Elec. Ass'n, 841 P.2d 282, 287 (Colo. 1992). The reason for its existence is that the employer is in a better position than third parties to take precautions against harm to unwitting third parties, and should not be permitted to shift liability to a contractor where inherently dangerous activities are involved.[20] We do not agree that the injury is so remote from the negligence that public policy precludes liability - indeed it follows directly from it. Also, we do not agree that holding Luethi liable imposes an unreasonable burden under these circumstances.
¶ 48. Alternatively, Luethi asks that we adopt a rule that liability may exist for a homeowner only where an activity is "extrahazardous," using the test employed by the Kansas district court in Desaire, which applied the six factors from Restatement (Second) of Torts § 520. Section 520, which falls in the division *439 concerning strict liability, defines "abnormally dangerous" activities using the following standard:
In determining whether an activity is abnormally dangerous, the following factors are to be considered:
(a) existence of a high degree of risk of some harm to the person, land or chattels of others;
(b) likelihood that the harm that results from it will be great;
(c) inability to eliminate the risk by the exercise of reasonable care;
(d) extent to which the activity is not a matter of common usage;
(e) inappropriateness of the activity to the place where it is carried on; and
(f) extent to which its value to the community is outweighed by its dangerous attributes.
Restatement (Second) of Torts § 520 (1977).
¶ 49. The Desaire decision relied on Section 520. From the cases to which the Desaire court cites, it can be inferred that the claim involved in the case may have been a claim for strict liability rather than a negligence claim though that is not clearly stated.[21] What is clear is that application of the factors from Section 520 is appropriate where a claim for strict liability is made. To *440 apply such a standard to negligence claims such as this one would be a departure from Wisconsin law, as the court of appeals correctly noted.[22] To import strict liability from a products liability context to a negligence claim would mean "reliev[ing] [a plaintiff] of proving specific acts of negligence and protecting] him from [applicable] defenses . . . ." Dippel v. Sciano, 37 Wis. 2d 443, 460, 155 N.W.2d 55 (1967).
¶ 50. Having established what the law in Wisconsin is, we turn to Luethi's final argument, which is that even if the "inherently dangerous" exception is the law and the Wagner and Lofy standards govern, herbicide spraying does not qualify as inherently dangerous. The plaintiffs, of course, disagree.
¶ 51. To support his argument that herbicide spraying is not inherently dangerous, Luethi points to Comment f to Restatement (Second) of Torts, Section 413. That section states:
One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions *441 are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
(a) fails to provide in the contract that the contractor shall take such precautions, or
(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.
Restatement (Second) of Torts § 413 (1965).
¶ 52. The comment to which Luethi refers provides that "the extent of the employer's knowledge and experience in the field of work to be done is to be taken into account," and Luethi asserts that in light of this comment, he cannot be held liable because he "had no knowledge of the peculiar risks involved, nor special precautions needed to mitigate them, nor any reason to foresee [the contractor] would ignore standard safety precautions such as instructions on the chemicals' labels." Luethi's knowledge or lack thereof are matters to be considered as to whether he exercised ordinary care.
¶ 53. Section 413, the section with the comment to which Luethi cites, falls into the first part of Chapter 15 of the Restatement (Second), "Liability of an Employer of an Independent Contractor." The chapter is divided into two parts: the first, Topic 1, covers "Harm Caused by the Fault of Employers of Independent Contractors," and the second, Topic 2, covers "Harm Caused by the Negligence of a Carefully Selected Independent Contractor." Topic 2, which includes sections 416 and 427, which we discussed above, overlaps with Section 413, as was acknowledged in Snider, in that all three contain language conditioning liability on, among other things, what the employer "should recognize" or "has reason to know" about the nature of the danger involved in the work.
*442 ¶ 54. Under sections 416 and 427, an employer's assertions of a lack of knowledge about an activity's dangerousness are not dispositive on the question of its inherent dangerousness because liability may be imposed for activity "which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken" (as Section 416 states), and for activity involving "a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract" (as Section 427 states).
¶ 55. The Restatement sections at issue thus explicitly condition liability not on actual knowledge but on the inherent dangers an employer of an independent contractor "should recognize," "has reason to know," or "has reason to contemplate." This "knows or has reason to know" factor seems to come into play on the question of whether Luethi failed to use ordinary care with regard to the activity.
¶ 56. In many cases, the determination of an activity's inherent dangerousness will be a question of fact.[23] However, in certain circumstances involving undisputed facts, a court may hold an activity is inherently dangerous as a matter of law. As noted above, Wisconsin Jury Instruction-Civil 1022.6 includes a note referring to the threshold "inherently dangerous" question that says, "There are times when the [first] question will not be necessary."
*443 ¶ 57. For example, in Lofy, this court held as a matter of law that "[t]he operation of a bus between Cumberland and Madison over modern highways cannot be considered inherently dangerous." Lofy, 42 Wis. 2d at 263. See also Brooks v. Hayes, 133 Wis. 2d 228, 395 N.W.2d 167 (1986). Here the court of appeals, citing the extensive and uncontroverted evidence, determined that certain precautions could reduce the risk to a reasonable level:
At the fact-finding hearing, Brian Borreson, Briarwood's owner, testified that when spraying herbicides, there is a risk that drift will occur and cause damage to neighboring properties. Lee Shambeau, Luethi's expert witness, also described various ways that sprayed herbicides can cross property lines, and he admitted that herbicide drift can cause harm. In addition, the Brandenburgs' expert, Gary LeMasters, testified that spraying herbicides involves a risk of drift onto neighboring properties. Luethi did not present any evidence to the contrary. Thus, the undisputed evidence established that Briarwood's spraying of the herbicides posed a risk of harm. Moreover, common sense dictates that herbicides sprayed outdoors on one property will not necessarily be contained to that property. Consequently, the risk of harm is one that could be naturally expected to arise in the absence of precautions.
Undisputed evidence also showed that the risk of harm could be reduced to a reasonable level by taking certain precautions. Both Borreson and Shambeau testified that various practices can be used to reduce the possibility of drift, including: (1) avoiding spraying during high velocity winds; (2) spraying when the wind is blowing away from a neighbor's property; (3) spraying in cooler weather; (4) using low pressure spray nozzles; (5) using a thickening agent; and (6) keeping spray nozzles close to the ground. While these practices do *444 not completely eliminate the possibility of drift, Borreson testified they "should be fairly effective in controlling the situation!.]" Similarly, Shambeau testified that the risk of drift can never be eliminated "100 percent," but it can be reduced by taking precautions. LeMasters agreed that the risk cannot be completely eliminated, but he stated the herbicides in question can be "applied safely without drift!.]" The circuit court aptly summarized the witnesses' testimony, stating that, although the risk of harm can never be eliminated entirely, it can be reduced "to a large degree by using reasonable care."
The undisputed evidence therefore established that Briarwood's application of the herbicides posed a naturally expected risk of harm, and that certain precautions could be taken to reduce the risk to a reasonable level.
Brandenburg v. Luethi, No. 2012AP2085, unpublished slip op., ¶¶ 22-24 (Wis. Ct. App. Apr. 23, 2013).
¶ 58. We agree with the court of appeals for the reasons it stated that in this case, under our precedent, the activity is inherently dangerous, because the activity poses a naturally expected risk of harm, and taking certain precautions could reduce the risk to a reasonable level.
¶ 59. That determination resolves the threshold question in this claim as to Luethi. Because the activity involved was inherently dangerous, Luethi may be liable despite hiring an independent contractor. The next questions to answer are 1) whether Luethi failed to use ordinary care with regard to any danger inherent in the herbicide spraying that he knew or had reason to know about, and 2) if so, whether any harm that occurred was caused by the spraying. As the court of appeals noted, "[T]he factual question remains for the jury to determine whether Luethi exercised ordinary care to prevent damage to the Brandenburgs' property." Id., ¶ 24.
*445 IV CONCLUSION
¶ 60. The record contains uncontroverted evidence that the chemical used here is capable of killing 56 "woody plant" species, including oak, birch, poplar and maple trees. It therefore poses a "naturally expected risk of harm" to trees on neighboring properties. The record also contains undisputed testimony and exhibits showing that it is possible to reduce that risk by taking precautions. Therefore, both parts of the inherently dangerous test are satisfied, and we agree with the court of appeals that under Wisconsin law, under these circumstances, "spraying the herbicides was an inherently dangerous activity, and, as a result, the general rule of nonliability for an independent contractor's torts did not apply."[24]
¶ 61. The threshold question in the negligence determination is resolved here in favor of a determination that Luethi may be liable on the grounds that the spraying here was an inherently dangerous activity. With that question resolved, the negligence claim may now proceed, with the plaintiffs having the opportunity to show that Luethi failed to use ordinary care with regard to the activity and that such failure was a cause of the damage claimed, followed by an appropriate damages question. This is consistent with the approach applied in Wisconsin Jury Instruction — Civil 1022.6 and the Suggested Verdict Form 1 (Inherently dangerous activity). It is also consistent with the Restatement sections on which we have relied in the prior cases addressing this question.
¶ 62. The Restatement sections describe a framework that imposes liability on an employer for the acts of *446 the independent contractor where three facts are established: that there exists a naturally expected risk of harm, that there exists an opportunity to take precautions against the harm, and that the employer "knows or has reason to know" that it poses a risk and requires precautions. The concurrence rightly points out that Wisconsin case law clearly adopts the "inherently dangerous exception" as described in the Restatement sections discussed herein. However, it is equally clear that Wisconsin courts have rejected a strict liability approach in "inherently dangerous" cases. Adopting such an approach would erase the distinction between "inherently dangerous" and "extrahazardous activity," which we explicitly declined to do in Wagner.
¶ 63. At this point in the case, there has been no determination by a trier of fact of what Luethi knew or had reason to know about the danger inherent in the work. To impose strict liability would therefore contravene the applicable section of the Restatement and change the law by erasing one requirement — making an employer liable for activities even where it is not established that the employer knew or had reason to know of the danger inherent in the work. The lack of clarity on the analysis in prior cases is partly due to the fact that this particular question has not been squarely addressed because the application of the "inherently dangerous" exception has been mentioned in other contexts rather than being subjected to full analysis. Nevertheless, imposing strict liability without any resolution of the knowledge requirement, within the framework of the duty of ordinary care, is unsupported by the Restatement sections. This "knows or has reason to know" factor seems to come into play on the question of whether Luethi failed to use ordinary care with regard to the activity. No resolution of that question has been made at this point in the record; therefore, the court of *447 appeals correctly stated that the case should be remanded for the relevant further determinations to be made, specifically "whether Luethi exercised ordinary care to prevent damage to the Brandenburgs' property."
¶ 64. We therefore affirm the court of appeals and remand this matter to the circuit court for further proceedings consistent with this opinion.
By the Court. — Affirmed and cause remanded to the circuit court for further proceedings consistent with this opinion.

 Lofy v. Joint Sch. Dist. No. 2, 42 Wis. 2d 253, 263, 166 N.W.2d 809 (1969).

 Wagner v. Cont'l Cas. Co., 143 Wis. 2d 379, 392-93, 421 N.W.2d 835 (1988).

 Hoida, Inc. v. M & I Midstate Bank, 2006 WI 69, ¶ 23, 291 Wis. 2d 283, 717 N.W.2d 17.

 Behrendt v. Gulf Underwriters Ins. Co., 2009 WI 71, ¶¶ 3, 14, 318 Wis. 2d 622, 768 N.W.2d 568.

 Id., ¶ 16. There we stated:
In Nichols v. Progressive Northern Insurance Co., we reiterated that Gritzner and Rockweit were 'still good law in Wisconsin.' There we held that in a negligence case, a defendant's conduct is not examined in terms of whether or not there is a duty to do a specific act, but rather whether the conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances.
See also Hoida, 291 Wis. 2d 283, ¶ 30 n.15 (applying Palsgraf *419 minority approach and stating, "[T]he majority opinion clearly concludes that [defendants] have a duty to exercise ordinary care under the circumstances. What the majority opinion turns on is whether the circumstances of this case require [defendants] to undertake all the affirmative acts that [plaintiff] requests.").

 See Morgan v. Pa. Gen. Ins. Co., 87 Wis. 2d 723, 735-36, 275 N.W.2d 660 (1979) (on the question of causation in a negligence case, stating that "whether negligence was a cause-in-fact of an injury is a factual question for the jury if reasonable men could differ on the issue, and the question only becomes one of law for judicial decision if reasonable men could not disagree").

 Brandenburg v. Luethi, No. 2012AP2085, unpublished slip op., ¶ 24 (Wis. Ct. App. Apr. 23, 2013).

 The suggested verdict form that follows Wisconsin Jury Instruction — Civil 1022.6, Liability of one employing independent contractor, presents three questions.
The first is, "Was the work performed by the (owner) (principal contractor) inherently dangerous?"
The second is, "If you answered 1 "yes," then answer this question: Did (owner) fail to use ordinary care in (describe the work done)?"
And the third is, "If you answered question 2 "yes," then answer this question: Was that failure to use ordinary care a *421 cause of (injury to (third person)) (damage to (third person)'s property)?" A note states, "There are times when the [first] question will not be necessary."

 The complaint alleges the following:
[B]etween July 22, 2008, and October 20, 2008, [an] employee of the [Wisconsin Department of Agriculture, Transportation, and Consumer Protection] . . . led an investigation .... Through laboratory analysis of samples taken from the trees and other plants on the plaintiffs'... property!,] the investigation determined that the active ingredient found in Garlón 4 Specialty Herbicide and Agrisolutions 2,4r-D LV4 was the direct cause of the total loss and extensive damage to said trees and other plants ....

 The record shows that a third-party complaint was subsequently filed by Briarwood Forestry stating that "[b]e-cause of a mistake, the policy was issued by [the insurer], excluding, rather than specifically including, liability coverage for damages related to or resulting from the spray application of herbicides." The complaint stated that Briarwood Forestry "believed they had liability insurance coverage for liability that may result from or be related to the spray application of herbicides" and attributed the mistake to "an error in the communication between the agent and the insurance company."

 The case, Bower v. Peate, 1 Q.B. 321 (1876), "gave rise to *427 an exceptional category of work likely to be peculiarly dangerous 'unless special precautions are taken.'" W Page Keeton et al., Prosser and Keeton on Torts § 71, at 512 (5th ed. 1984).

 We agree with the general statement of the inherently *428 dangerous exception as set forth by the Chief Justice's concurrence/dissent. Concurrence/Dissent, ¶ 5. However, we are not convinced that our precedent has fully explained the steps applicable to the analysis of the inherently dangerous exception. For example, in setting forth the inherently dangerous exception the concurrence/dissent quotes Brooks v. Hayes, 133 Wis. 2d 228, 395 N.W.2d 167 (1986). However, Brooks did not apply the inherently dangerous exception at all; therefore, it did not illuminate any analysis in terms of the inherently dangerous exception's application. Instead, Brooks concerned the negligence of an independent contractor under "a breach of contract theory." Id. at 241. In contrast to Brooks, our opinion today sets forth the proper analysis in applying the inherently dangerous exception to the general rule.

 The Brandenburgs argue, in the alternative, that even if a higher standard is required before holding that an employer may be liable for the acts of an independent contractor, it is met here because spraying qualifies as an extrahazardous activity under the test set forth in Wagner, 143 Wis. 2d at 392-93 (defining an extrahazardous activity as "one in which the risk of harm remains unreasonably high no matter how carefully it is undertaken"). Because we resolve this case on the basis of the "inherently dangerous" exception to the independent contractor rule, we do not address their alternative argument.

 Lofy, 42 Wis. 2d 253.

 See State v. Kucik, No. 2009AP933-CR, unpublished slip op., ¶ 46 (Wis. Ct. App. Nov. 16, 2010) (Fine, J., concurring) ("Simply put, there is no specific on-all-fours case because the issue has apparently not come up before now. That, of course, is no reason to not decide the issue.").

 Restatement (Third) of Torts, Section 59, states that it replaces sections 416 and 427. Neither party cited to that section or in any way relied on it, and we will thus not discuss it further.

 It appears that Section 413 could have potential application to the facts of this case; however, the Brandenburgs did not allege in the complaint that any harm was caused by Luethi. Rather, the sole basis identified in the complaint for the claim was the negligence of Briarwood Forestry Services, LLC, and its employee for failing to ensure that the herbicide was safely applied. Section 413 is entitled "Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor," and it falls under Chapter 15, Liability of an Employer of an Independent Contractor, under the heading, "Topic 1, Harm Caused by Fault of Employers of Independent Contractors." It states:
One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer (a) fails to provide in the contract that the contractor shall take such precautions, or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.
Restatement (Second) of Torts § 413 (1965).

 We are not unaware that the exception has its occasional detractor. A dissenting opinion in a 1992 Colorado case concluded that the exception was impractical and unnecessary and stated that "clearer more predictable theories of liability are available to address the policy considerations that purportedly support the inherently dangerous doctrine." Huddleston by Huddleston v. Union Rural Elec. Ass'n, 841 P.2d 282, 295 (Colo. 1992) (Rovira, J., dissenting).

 We have summarized those factors as follows:
In Colla v. Mandella, 1 Wis. 2d 594, 598-99, 85 N.W.2d 345 (1957) this court first articulated the following six public policy factors that could be used by courts to limit liability in negligence claims: 1) [T]he injury is too remote from the negligence; 2) Recovery is too wholly out of proportion to the culpability of the negligent tort-feasor; 3) [I]n retrospect it appears too highly extraordinary that the negligence should have brought about the harm; 4) Allowing recovery would place too unreasonable a burden upon [the tortfeasor]; 5) Allowing recovery would be too likely to open the way to fraudulent claims; or 6) Allowing recovery would enter a field that has no sensible or just stopping point.
Fandrey ex rel. Connell v. Am. Family Mut. Ins. Co., 2004 WI 62, ¶ 1 n.1, 272 Wis. 2d 46, 680 N.W.2d 345 (internal quotations omitted).

 Restatement (Second) Torts, Introductory Note to §§ 416-429. ("[F]or reasons of policy, the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor.")

 This is partly because the Desaire court was not actually deciding the "abnormally dangerous" activity issue; it was merely commenting on the issue in the context of deciding a completely unrelated matter, that "the state district court did not issue a final and hence binding order on the Co-op's independent contractor status." Desaire v. Solomon Valley Coop, Inc., No. 94-1271-PFK, at *3 (D. Kan., Sept. 14, 1995).

 The court of appeals stated,
Moreover, even absent any conflict with Wisconsin law, we are not convinced that Desaire's reliance on § 520 was correct. Section 520 is found in Chapter 21 of the Restatement, which deals with situations in which a person may be subject to strict liability for harm caused by abnormally dangerous activities. See, e.g., Restatement (Second) of Torts §§ 519, 520B, 520C (1977). Chapter 21 does not address employer liability for harm caused by an independent contractor. That topic is instead discussed in Chapter 15, which contains a section that specifically addresses an employer's liability for inherently dangerous activities. See id., § 427 ("Negligence as to Danger Inherent in the Work").
Brandenburg v. Luethi, No. 2012AP2085, unpublished slip op., ¶ 20, (Wis. Ct. App. Apr. 23, 2013).

 See, e.g., Mueller v. Luther, 31 Wis. 2d 220, 230-231, 142 N.W.2d 848 (1966) and Wis. JI — Civil, 1022.6, Liability of One Employing Independent Contractor (including as a suggested verdict form a jury question on whether the work performed was inherently dangerous).

 Brandenburg v. Luethi, No. 2012AP2085, unpublished slip op., ¶ 24 (Wis. Ct. App., Apr. 23, 2013).