COURT OF APPEALS
DECISION
DATED AND FILED

March 28, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2021AP1813**

Cir. Ct. No. 2019CV3737

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

ROXANNE SCHLENDER,

PLAINTIFF-APPELLANT,

COMMON GROUND HEALTHCARE COOPERATIVE AND MOLINA HEALTHCARE OF WISCONSIN,

INVOLUNTARY-PLAINTIFFS,

V.

ABC INSURANCE COMPANY,

DEFENDANT,

THE TRAVELERS INDEMNITY COMPANY,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: DAVID C. SWANSON, Judge. *Affirmed.*

Before Brash, C.J., Donald, P.J., and White, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Roxanne Schlender appeals the order of the trial court granting summary judgment in favor of The Travelers Indemnity Company (Travelers), and dismissing her action with prejudice.  Schlender's action stemmed from an incident at Potawatomi Casino—which was insured through Travelers—during which Schlender alleged she suffered an assault and battery and false imprisonment by a police officer who was working security duty at Potawatomi.

¶2     Upon review, we conclude that the trial court properly granted summary judgment.  We therefore affirm.

## BACKGROUND

¶3     The incident at Potawatomi occurred in March 2017.  Schlender went to Potawatomi to gamble, and had a "couple drinks."  Schlender claims a man she did not know was "following [her] around," so she went into the women's restroom to elude him.  Schlender was found by female Potawatomi security personnel "passed out or unconscious" in a toilet stall.  The security officers brought Schlender out of the restroom in a wheelchair.

¶4     Schlender testified in her deposition that she was "embarrass[ed]" to be sitting in the wheelchair in the middle of the casino while talking to the security personnel, so she just decided "to walk away and leave."  Surveillance video of the incident shows Schlender outside of the restroom talking to additional casino security staff, where she "pushed … or poked her finger" into one of them.  The

video also shows Schlender "doing some kind of a dance or a jig," and then running away.

¶5     Potawatomi security staff then called for assistance. Officer Charles Seelow, from the Milwaukee Police Department (MPD), was working "security and law enforcement duty" at Potawatomi, and responded to assist with the situation. MPD provides police officers for security duty at Potawatomi, pursuant to an agreement dated October 2013 between MPD and the Forest County Potawatomi Community d/b/a Potawatomi Bingo Casino, based on Potawatomi's status as a large "entertainment venue" in the City of Milwaukee with "unique security needs that require additional police services."

¶6     Officer Seelow testified in his deposition that when he observed Schlender, who seemed to be "highly intoxicated," she was "running from or away from security staff[.]" Officer Seelow stated he tried to speak to Schlender, but that she did not seem to "really know where she was" and was "really not coherent," so he attempted to escort her to the holding room by grabbing her left arm in a "normal escort hold."

¶7     Officer Seelow stated that Schlender continued to "flail" her arms as he was escorting her to the holding room and was not listening to him. She suddenly "mule-kicked" him, striking him in the shin with her "big, thick high-heeled shoes." The officer then forced Schlender to the ground and handcuffed her. Schlender hit her head on a pillar as she was forced to the ground, and Officer Seelow noted that she was bleeding; he called for medical help, and contacted his sergeant due to his use of force on Schlender.

¶8     Schlender filed a complaint in May 2019 against Potawatomi and Travelers, alleging assault and battery, battery causing bodily harm, and false

imprisonment, based on the incident with Officer Seelow. Potawatomi filed a motion to dismiss with prejudice on the basis of tribal sovereign immunity, which was granted by the trial court.[1]

¶9      Travelers subsequently filed a motion for summary judgment. As Travelers explained in its motion, the ongoing agreement between Potawatomi and MPD states that the "parties are acting as independent contractors," but that "MPD personnel shall remain under the sole command of MPD supervisors and shall remain employees of the City of Milwaukee for all purposes whatsoever." This includes addressing any complaints relating to officer conduct and determining whether disciplinary measures are appropriate.

¶10     Travelers thus argued that during the incident with Schlender, Officer Seelow was an independent contractor under the control of MPD, not Potawatomi. As a result, Potawatomi—and by extension, Travelers—was not liable for the actions of Officer Seelow.

¶11     The trial court granted Travelers' motion. It found that Schlender had stated in her deposition that Officer Seelow was the only one to touch her during the incident, as opposed to any of the Potawatomi security staff. Therefore, the court determined that the primary issue was Officer Seelow's status as an independent contractor during the incident; that is, whether he was under the control of Potawatomi or MPD.

¶12     The trial court found that the agreement between MPD and Potawatomi made it "very clear" that Officer Seelow was acting as a police officer while working security duty at Potawatomi, and thus was under the control of MPD.

---

[1] Schlender does not appeal that decision.

4

As such, MPD had "sole liability" for Officer Seelow's actions that night. The court further rejected Schlender's argument that Potawatomi had a duty to intervene in the actions of Officer Seelow or any police officers working security duty there, and in fact pointed out that such interference would be illegal.

¶13    Additionally, the trial court noted that Schlender had filed a motion to compel discovery and for sanctions against Travelers, arguing that there was additional video surveillance footage from different cameras that had not been produced. The court acknowledged that having recognized Potawatomi's sovereign immunity, it could not compel its cooperation, which in turn "made things more difficult" for Schlender in terms of obtaining discovery. However, the court further noted that Schlender could have issued subpoenas to witnesses who were there that night, and her failure to pursue other forms of discovery was not the fault of Travelers.

¶14    In sum, the trial court found that there was no theory of liability under which Schlender's action was viable. Accordingly, it granted Travelers' summary judgment motion and dismissed the complaint. This appeal follows.

## DISCUSSION

¶15    The issues raised by Schlender on appeal generally revert back to the question of whether the trial court properly granted summary judgment in favor of Travelers. This court reviews a trial court's decision to grant summary judgment independently, applying the same methodology, in accordance with WIS. STAT. § 802.08 (2021-22).[2] *Kohn v. Darlington Cmty. Sch.*, 2005 WI 99, ¶11, 283 Wis.

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

2d 1, 698 N.W.2d 794. Summary judgment shall be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sec. 802.08(2).

¶16     As the trial court noted, the threshold issue in this matter is which entity—MPD or Potawatomi—was in control, and therefore ultimately liable, for Officer Seelow's actions during the incident. This issue is addressed in the agreement between MPD and Potawatomi regarding the use of police officers for security duty at the casino. Contract interpretation presents a question of law, which we review independently. *Tufail v. Midwest Hosp., LLC*, 2013 WI 62, ¶22, 348 Wis. 2d 631, 833 N.W.2d 586. "Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms." *Id.*, ¶26. Furthermore, "[w]e presume the parties' intent is evidenced by the words they chose, if those words are unambiguous." *Id.* (citation omitted).

¶17     The agreement is quite clear about the parties' intent with regard to this issue. The agreement states that MPD would provide "off-duty, overtime assignment of MPD police officers" for security duty at Potawatomi. Furthermore, it provides that "[t]he actions of the MPD personnel shall be governed by the policies and practices of the City and the MPD as exercised in the discretion the City and the Chief [of Police of MPD]." Additionally, it states that "[t]he parties acknowledge that financial and civil liability for the actions and omission[s] of each employee *remain vested with its respective employing agency*." (Emphasis added.)

¶18     The trial court addressed the fact that the agreement indicates that the "parties" are "independent contractors" for purposes of executing the duties described in the agreement. It cited *Acuity Mutual Insurance Co. v. Olivas*, 2006

WI App 45, ¶16, 289 Wis. 2d 582, 712 N.W.2d 374, as the controlling case on this issue. *Olivas* explains that the analysis for determining whether an employee is an independent contractor depends on who "has the right to control the details of his or her performance." *Id.* Again, based on the provisions of the agreement, it is clear MPD had control over Officer Seelow's actions, not Potawatomi.

¶19 Schlender argues that regardless of this contract language, Officer Seelow's status is a disputed material fact.[3] She bases this argument on some of Officer Seelow's statements during his deposition testimony, such as that he had to attend a half-hour training seminar given by one of Potawatomi's security supervisors before working any security duty shifts at the casino; that he entered the casino through its employee entrance when working a shift; and that he used a casino-issued radio while working at the casino, which was how he responded to the call relating to Schlender on the night of the incident.

¶20 We disagree that these facts are material to the independent contractor analysis. Evidence that is extrinsic to the contract may be used to determine the parties' intent only when the terms of the contract are ambiguous. *Tufail*, 348 Wis. 2d 631, ¶27. We conclude that the agreement unambiguously provides that Officer Seelow, as well as any other MPD officers who work security duty at Potawatomi, are under the control of MPD, not Potawatomi. *See id.*, ¶26. Therefore, since

---

[3] Schlender also argues that there are facts in the record supporting a conclusion that Officer Seelow was a "loaned employee." *See* **Borneman v. Corwyn Transp., Ltd.**, 219 Wis. 2d 346, 353, 580 N.W.2d 253 (1998). However, **Borneman** explains that one of the "vital questions" in the analysis for determining whether an employee was loaned is who had "the right to control the details of the work being performed[.]" *Id.* at 354. We therefore reject Schlender's loaned employee argument under the same reasoning we discussed regarding independent contractors—that the agreement between MPD and Potawatomi makes it clear that MPD is in control of the officers working security duty.

Potawatomi was not in control of Officer Seelow, Travelers—as the insurer for Potawatomi—cannot be held liable for Officer Seelow's actions during the incident.

¶21     Schlender also argues that the "inherently dangerous" exception as it relates to negligent acts of an independent contractor is applicable in this case. Under this exception, "an employer of an independent contractor may be liable for the torts of an independent contractor if the activity of the independent contractor is inherently dangerous." *Brandenburg v. Briarwood Forestry Servs., LLC*, 2014 WI 37, ¶3, 354 Wis. 2d 413, 847 N.W.2d 395. Schlender cites *State v. Reed*, 2018 WI 109, ¶92, 384 Wis. 2d 469, 920 N.W.2d 56, for the premise that law enforcement is "an inherently dangerous profession," asserting that this infers liability on Potawatomi for Officer Seelow's actions. However, that is not an accurate application of the inherently dangerous exception; rather, law enforcement is an inherently dangerous profession because of the harm officers may potentially face from criminal suspects, not from their own conduct. *See id.* Thus, this exception simply does not apply to the facts of this case.

¶22     Additionally, Schlender asserts that the trial court did not address her argument that Potawatomi had a common law duty to protect its patrons. On the contrary, the trial court rejected this assertion that anyone associated with Potawatomi had "any duty … to attempt to restrain Officer Seelow or change his conduct of his duties at that particular time," and that it is in fact "against the law for anyone to interfere with the performance of [a police officer's] duties at the time that they are engaging in performing those duties." *See* WIS. STAT. § 946.41; *see also **Kagel v. Brugger**, 19 Wis. 2d 1, 8, 119 N.W.2d 394 (1963) ("Private citizens are not to interfere with police methods of apprehending law violators."). We reject Schlender's assertion on the same grounds, as we have concluded that Officer

Seelow was acting in accordance with the policies and practices of MPD at the time of the incident.

¶23 Finally, we address Schlender's argument that the trial court improperly denied her the right to obtain discovery. The order or prohibition of discovery is a matter that lies within the discretion of the trial court. *Rademann v. DOT*, 2002 WI App 59, ¶34, 252 Wis. 2d 191, 642 N.W.2d 600.

¶24 Specifically, Schlender argues that she sought information on the policies and procedures regarding casino security staff and MPD officers working security duty. In addressing Schlender's discovery motion, the trial court acknowledged that it had quashed a subpoena served on Potawatomi based on its previous ruling that Potawatomi has sovereign immunity. However, the court observed that there were other sources for which Schlender could have issued subpoenas to obtain the information she was seeking—for example, MPD or other officers working security duty at Potawatomi may have had information relevant to this issue—but Schlender failed to pursue them. The court's ruling on this issue is "consistent with the facts of record and established legal principles," and we will therefore not disturb it. *See Crawford ex rel. Goodyear v. Care Concepts, Inc.*, 2001 WI 45, ¶11, 243 Wis. 2d 119, 625 N.W.2d 876 (citations and one set of quotation marks omitted).

¶25 In the same vein, Schlender's argument that Travelers should have been estopped from relying on facts that she was not given the opportunity to "test" is rejected based on similar reasoning. In order for equitable estoppel to be applicable, a party's action or inaction must have "induce[d] reasonable reliance" by the other party, to its detriment. *Milas v. Labor Ass'n of Wis., Inc.*, 214 Wis. 2d 1, 11-12, 571 N.W.2d 656 (1997).

¶26   We fail to see how the doctrine of equitable estoppel is applicable here.  Schlender's argument is that Travelers should have been forced to produce the discovery she was seeking through her subpoena for Potawatomi that was quashed—even though Potawatomi was dismissed as a party, based on sovereign immunity—and that by failing to do so, Travelers should have been estopped from raising any defenses that may have been offset by the information she was seeking.  However, this argument does not address the fact that Schlender failed to pursue other available sources for the discovery she sought.  It was Schlender's burden, as the party opposing summary judgment, to "come forward with specific facts showing a genuine dispute."  *Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 664, 476 N.W.2d 593 (Ct. App. 1991).

¶27   In sum, we reject Schlender's claims and conclude that the trial court properly granted summary judgment in favor of Travelers.  We therefore affirm.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.